

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEVEN A. TAYLOR, <br> PLAINTIFF, | § <br> § <br> § | |
| v. | § | CIVIL ACTION NO. 4:13-CV-534-O |
| | § | |
| CAROLYN W. COLVIN, ACTING <br> COMMISSIONER OF SOCIAL SECURITY, <br> DEFENDANT. | § <br> § <br> § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Steven A. Taylor ("Taylor") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA"). In September 2010, Taylor protectively filed his application, alleging that his disability began on February 1, 2010. (Tr. 20, 144-50.) His application for benefits was denied initially and on reconsideration. (Tr. 20, 96-105.) An administrative law judge ("ALJ") held a hearing on March 6, 2012 and issued a

1

decision on May 16, 2012, finding that Taylor was not disabled because Taylor had the ability to perform his past relevant work as a security guard (corrections officer). (Tr. 20-29, 34-81.) The Appeals Council denied Taylor's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent

the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

## III. ISSUES

In his brief, Taylor presents the following issues:[1]

1. Whether the ALJ's mental residual functional capacity ("RFC") determination is supported by substantial evidence; and

2. Whether the ALJ erred in his Step Four determination.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 6-16.)

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his May 16, 2012 decision, the ALJ found that Taylor met the disability insured status requirements of Title II of the SSA through December 31, 2015 and that he had not engaged in substantial gainful activity since February 1, 2010, his alleged onset date of disability. (Tr. 22.) The ALJ further found that Taylor had "hepatitis C, degenerative disc disease of the lumbar spine, myositis, alcohol-induced rhabdomyolysis, osteoarthritis of the right knee, post-traumatic stress disorder ("PTSD"), major depressive disorder, and a history of polysubstance dependence" and that the combination of his impairments was "severe." (Tr. 22.) Next, the ALJ held that none of Taylor's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 22-24.)

As to Taylor's RFC, the ALJ stated:

> The claimant has the ability to perform and maintain the following residual functional capacity: lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; sit, stand, and walk (individually or in combination) throughout an eight-hour workday; and otherwise perform the full range of light work, except: he can only occasionally climb ladders, ropes, or scaffolds; he can only occasionally kneel, crouch, and crawl; he can frequently climb ramps or

---

[1] The Court has summarized the issues Taylor listed in his brief and will discuss Taylor's specific arguments in detail in section V., *supra*.

4

stairs, balance, and stoop; and he can perform occupations involving detailed, but not complex, instructions, including occupations with a reasoning development level of 1-3 (as defined in the *Dictionary of Occupational Titles*).

(Tr. 24 (emphasis omitted).) The ALJ opined, based on his RFC assessment and the testimony of the vocational expert ("VE"), that Taylor could perform his past relevant work as a security guard (corrections officer). (Tr. 28-29.) Thus, the ALJ found that Taylor was not disabled. (Tr. 29.)

## V. DISCUSSION

### A. Mental RFC Determination

In his brief, Taylor argues that the "mental RFC limiting plaintiff to 'detailed, but not complex, instructions' as defined in the . . . [DOT] reasoning development level of 1-3 . . . does not even arguably address the impact of Mr. Taylor's social and concentration, persistence and pace deficits." (Pl.'s Br. at 6.) Taylor claims that the ALJ's use of the DOT's reasoning development levels ("RDLs") of 1-3 as a benchmark for Taylor's ability to perform "detailed, but not complex, instructions" bears no rational relationship with the RDLs, and, thus, fails to address the mental limitations found by the ALJ. (Pl.'s Br. at 7, 9-10.) Taylor further argues that every limitation found by the ALJ in the "'paragraph B criteria' must be translated into a detailed assessment and limitation in the RFC finding" and "[a]side from the 'reasoning level' reference, the ALJ made no attempt to fulfill this obligation to assess <u>all</u> the claimant's <u>individual</u> impairments and limitations." (Pl.'s Br. at 8 (emphasis in original).) Taylor also claims that "even assuming that the ALJ's finding with respect [to] mild impairment of social functioning and activities of daily living is accurate, the ALJ still erred when he failed to include

these mild limitations into his mental RFC and did not explain why he did so." (Pl.'s Br. at 10 (emphasis omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c).[2] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[3] and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[4] The ALJ's written decision must incorporate pertinent findings and

---

[2] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[3] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[4] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 404.1520a(d)(2).[5] To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); see Boyd, 239 F.3d at 705.

The responsibility for determining the RFC falls to the ALJ. Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995). The paragraph B criteria limitations that the ALJ finds following the

---

[5] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." Id. "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." Id.

"special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of the claimant's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* The RFC assessment includes consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6. "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009); *see Westover v. Astrue*, No. 4:11-cv-816-Y, 2012 WL 6553102, at *8 (N.D. Tex. Nov. 16, 2012).

In this case, while analyzing Taylor's mental impairment pursuant to the "special technique" under the regulations, the ALJ found that Taylor had (1) mild restrictions in his activities of daily living; (2) mild difficulties in social functioning; (3) moderate difficulties in concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. (Tr. 23.) In making such a determination, the ALJ stated:

>In activities of daily living, Mr. Taylor has a mild restriction. For example, at Exhibit 3E the claimant reported he was able to take care of his personal needs, prepare small meals, do the laundry, clean, drive, shop in stores, pay bills, count change, and handle a savings account. In social functioning, Mr. Taylor has mild difficulties. At Exhibit 3E, he reported that he had never been fired or laid off from a job because of difficulty getting along with others. With regard to concentration, persistence, or pace, Mr. Taylor has moderate difficulties, insofar as he can perform detailed, but not complex, tasks. At Exhibit 3E, Mr. Taylor reported no difficulty with following written or spoken instructions. As far as episodes of decompensation, Mr. Taylor experienced no episodes of decompensation of extended duration.

(Tr. 23.)

Next, the ALJ went on to make the RFC determination. As stated above, the ALJ found that Taylor had the mental RFC to "perform occupations involving detailed, but not complex, instructions, including occupations with a reasoning development level of 1-3 (as defined in the *Dictionary of Occupational Titles* ["DOT"])." (Tr. 24.) In making such a mental RFC determination, the ALJ reviewed, *inter alia*, the following evidence: (1) treatment notes from the Dallas VA dated April 15, 2010 indicating that Taylor had a moderately depressed mood and restricted affect and was diagnosed with depression, not otherwise specified; alcohol abuse; and a Global Assessment of Functioning ("GAF")[6] score of 60[7] (Tr. 27; *see* Tr. 327-32); (2) a psychological consultative examination dated November 19, 2010 in which James Jensen, Psy.D., diagnosed Taylor with chronic PTSD; severe major depression without psychotic

---

[6] A GAF or Global Assessment of Functioning score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV).

7 A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 34.

features; alcohol dependence; and a GAF score of 35[8] and opined that Taylor's prognosis might improve if he received psychiatric care and abstained from alcohol and marijuana (Tr. 27; *see* Tr. 582-85); (3) treatment notes from the Dallas VA dated August 14, 2011 that indicated Taylor: (a) had not received treatment in over a year and that his use of alcohol was "a primary driver for his depression," (b) was diagnosed with depression, alcohol abuse, and a GAF score of 65,[9] and (c) had been prescribed with Mirtazapine. (Tr. 27-28; *see* Tr. 678-81); and (4) treatment notes from the Dallas VA dated December 1, 2011 that indicated Taylor: (a) "reported improvement in sleep with his medications and that he was well satisfied with the response to his current medication regimen," (b) was "noted to have an euthymic mood and congruent affect, and he had only minimal anxiety," and (c) was diagnosed with depression, alcohol abuse, and a GAF score of 70 (Tr. 28; *see* Tr. 695-98). The ALJ further stated:

> I evaluated Mr. Taylor's subjective complaints in compliance with 20 CFR 404.1529 and SSR 96-7p. In addition, I considered Mr. Taylor's testimony, his very good work history, and the information and observations provided by his treating physicians and consultative physician, as well as by third parties. In doing so, I found that the claimant's allegations, including his testimony, had limited credibility.
>
> . . . .
>
> In reaching my finding as to Mr. Taylor's mental residual functional capacity, I considered the consultative examiner assigned the claimant a very low GAF score of 35 in November 2010; however, Mr. Taylor was not receiving psychiatric care at that time. Additionally, Dr. Jensen opined the claimant's

---

[8] A GAF score of between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

[9] A GAF score of between 61 and 70 indicates some mild symptoms or some difficulty in social, occupation, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. DSM-IV at 34.

> condition would improve if he abstained from alcohol and drug abuse. Once beginning a medication regimen in August 2011, Mr. Taylor was noted to have an euthymic mood with GAF scores ranging from 65 to 70. Moreover, there was no evidence he had any deficits with concentration. Additionally, at Exhibit 3E the claimant reported he was able to take care of his personal needs, cook, clean, drive, shop in stores, pay bills, and handle a savings account. He also reported he followed written instructions "good" and spoken instructions "okay." Moreover, he stated he had never been fired or laid off from a job because of difficulty getting along with other people. Therefore, limiting Mr. Taylor to detailed, non-complex job tasks was very generous. Moreover, there is no evidence the claimant has any limitation with social interaction.
>
> In accordance with SSR 96-6p, I considered the administrative findings of fact made by the State Agency medical physicians. These opinions were weighed as a statement from a non-examining source. The State agency opinions were generally supported by the medical evidence then available. Accordingly, the State agency opinions were granted significant, but certainly not controlling, evidentiary weight in determining the claimant's physical functional abilities. I found that Mr. Taylor is more appropriately limited to the light range of work, rather than the medium range found by the State agency examiners, given the claimant's combination of impairments. While the evidence does not entirely support Mr. Taylor's extensive complaints, some level of pain could reasonably be expected as a result of his impairments. Nonetheless, the opinions of the State agency medical consultants directly support my finding that Mr. Taylor's impairments allow him to work on a consistent, full-time basis at least at the light level. However, I gave great weight to the State agency's findings that the claimant can perform detailed, non-complex job tasks and has no deficits in social interaction. There is no medical opinion from any medical source indicating that Mr. Taylor is incapable of working.

(Tr. 25, 28 (internal citations omitted).)

Based on the facts in this case, the ALJ's mental RFC determination limiting Taylor to the performance of detailed, but not complex, instructions is not contradictory with the ALJ's finding in the "special technique" that Taylor was mildly limited in his activities of daily living and social functioning, and moderately limited in his ability to maintain concentration,

11

persistence, or pace.[10] It is clear that the ALJ recognized in his decision that he was required to evaluate Taylor's mental impairments pursuant to the "special technique" set forth in the regulations as he made such an evaluation. (Tr. 23-24.) The ALJ then incorporated Taylor's functional limitations of having mild difficulties in his activities of daily living and social functioning, and moderate difficulties in concentration, persistence, and pace into limitations in

---

[10] *See, e.g., Dean v. Colvin*, No. 4:13-CV-089-A, 2014 WL 1724765, at *12 (N.D. Tex. Apr. 30, 2014) ("Based on the facts in this case, the ALJ RFC determination limiting [the claimant] to the performance of, in essence, "simple" job tasks is not inherently contradictory with the ALJ's finding in the 'special technique' that Dean was moderately limited in his abilities to maintain concentration, persistence, or pace or perform activities of daily living as such limitation would not preclude him from performing the 'simple' requirements of his past previous work as a janitor."); *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:11–CV–3126–L (BF), 2013 WL 632104, at *19 (N.D. Tex. Feb. 4, 2013) (stating that, based on evidence impugning claimant's credibility regarding her activities of daily living, "[t]he ALJ properly incorporated Plaintiff's moderate daily living activities in restricting Plaintiff to 'simple, repetitive tasks.' "); *De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, make decisions, and attend and concentrate for extended periods); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL 4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[The claimant] has not demonstrated that a restriction [in the RFC determination] to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace."); *see also Gandara v. Astrue*, No. 4:10-cv-4243, 2011 WL 4852327, at *12 (S.D. Tex. Oct. 12, 2011) ("The ALJ determined that Gandara retained the mental RFC to perform detailed, but not complex, work tasks secondary to his depression. This assessment was based on the ALJ's finding that Gandara only had a mild limitation in activities of daily living and social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.")

*But see Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *8 (N.D. Tex. Feb. 17, 2012) ("The Court finds the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."), *adopted in* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012) (Lindsay, J.); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or pace was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

the RFC such that Taylor was limited to jobs involving detailed, but not complex, instructions. (*Id.*) After reviewing the medical evidence, the claimant's reported abilities, and noting that Taylor had limited credibility, the ALJ stated that limiting Taylor to detailed, non-complex job tasks was "very generous" and that there was "no evidence the claimant has any limitation with social interaction." (Tr. 28; *see* Tr. 25.) The ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's evaluation of Taylor's mental impairments as well as the mental RFC assessment, remand is not required.[11]

### B. Step Four Determination

Taylor next argues that the ALJ's errors were, in essence, compounded at Step Four because "the record simply does not reflect the level of concentration, persistence and pace required to perform security jobs like the claimant performed in the past." (Pl.'s Br. at 12 (emphasis omitted).) Taylor states that "it can be assumed that a person [in] any security position would require a high level of ability to concentrate and persist, at a bare minimum." (*Id.*) Taylor further claims that the ALJ's errors were not harmless because at the time of the hearing Taylor was 54 years, eight months old, and, "[b]ased upon the ALJ's physical RFC

---

[11] Because substantial evidence supports the ALJ's RFC determination, any error in such determination is harmless. *See Montemayor v. Astrue*, No. 6:10-CV-0052-BG, 2012 WL 444001, at *8 (N.D. Tex. Jan. 9, 2012) ("In view of the foregoing substantial evidence, any alleged inconsistency in the ALJ's findings does not require remand because it did not affect Montemayor's substantial rights.").

finding alone, if plaintiff's mental impairments prevented him from performing past relevant jobs, the medical vocational guidelines, or grids, would likely result in a finding that he is 'disabled' under the Act." (Pl.'s Br. at 14 (emphasis omitted).)

Once the ALJ has made the RFC determination, the ALJ moves on to Step 4 of the disability analysis. When determining at Step Four whether the claimant could perform his past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a [VE] to find that [the claimant] was able to return to her past relevant work . . . ."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.") "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). At Step 4, the claimant bears the burden of showing that she cannot perform her past relevant work. *See Leggett*, 67 F.3d at 564.

In this case, the VE testified, *inter alia*, that Taylor could perform his past relevant work as a security guard (corrections officer) as it is both actually and generally performed if he were limited to the ability to perform light work with the following additional restrictions: (1) occasionally climb ladders, scaffolds, or ropes, kneel, crouch, or crawl; (2) frequently climb ramps or stairs, balance, or stoop; and (3) perform jobs involving only detailed, but not complex, instructions. (Tr. 68, 70.) The VE acknowledged that the job of a security guard has an RDL of

14

three and testified that such an RDL is "commensurate with detailed, but not complex" work. (Tr. 72; *see* DOT § 372.667034 (4th ed., rev. 1991).)

The ALJ based his decision at Step Four that Taylor could perform his past relevant work as a security guard on the VE's testimony. (Tr. 28.) As to Taylor's claim that the ALJ also failed to incorporate Taylor's moderate limitation in concentration, persistence, or pace in the hypothetical to the VE, the Court notes that the hypothetical question posed to the VE must reasonably incorporate all of the disabilities recognized by the ALJ's RFC assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.* In the series of hypothetical questions that the ALJ asked the VE, the ALJ included all limitations that the ALJ ultimately found in the RFC determination. The VE testified that an individual limited to the above-described RFC could perform jobs as a security guard (corrections officer). (Tr. 70, 72.) In other words, the ALJ relied on the VE's testimony that specifically related to the functional limitations that the ALJ actually **found** in his RFC assessment. Although the ALJ asked the VE questions that contained other or different limitations, the ALJ ultimately did not find that Taylor suffered from such limitations and did not include such limitations in the final RFC determination. (Tr. 67-80.) Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013

15

WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue*, No. 3:10-CV-1413-BK, 2011 WL 540299, at *7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).

As to Taylor's claim that the "record simply does not reflect the level of concentration, persistence and pace required to perform security jobs like the claimant performed in the past," the Court notes that in deciding whether a claimant has the RFC to perform his past relevant work, the ALJ determines whether the claimant can perform his past relevant work as he actually performed it or as the work is generally performed in the national economy. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (holding that an ALJ is required to assess the demands of past jobs, and the determination may rest on descriptions of past work as actually performed or as generally performed in the national economy); *see also* Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2 (S.S.A. 1982.) In this case, the ALJ found that Taylor could perform his past relevant work as a security guard as it is both actually and generally performed. (Tr. 29.) While Taylor argues that "there is no reason to believe that the claimant's past relevant work . . . as a security guard would involve anything less than flawless capacity to concentrate" (Pl.'s Br. at 12), at the very least, Taylor has provided no evidence beyond his own speculation that a person limited to the performance of detailed but not complex instructions could not perform the work of a security guard. Moreover, the VE, when specifically asked about this issue, testified that an individual limited to the above RFC could perform jobs as a security guard (corrections officer). (Tr. 72-73.) It was not error for the ALJ to rely on the

16

VE's testimony because a VE is familiar with the specific requirements of a particular occupation.

As to Taylor's argument regarding Step Five and the grids, the Court notes that it has found, as set forth above, that substantial evidence supports the ALJ's RFC determination as well as his Step Four determination. Thus, the Court will not consider Taylor's theoretical issue regarding what would have happened if the ALJ had proceeded to Step Five.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 5, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 22, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv